IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JOSE A. GOMEZ } | |
| } | |
| Plaintiff, } | |
| v. } | CIVIL ACTION NO. H-05-2222 |
| } | |
| LSI INTEGRATED, L.P. d/b/a } | |
| GRAPHIC SOLUTIONS PLUS, } | |
| an Ohio Corporation } | |
| } | |
| Defendant. } | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

Pending before the Court is Defendant LSI Integrated, L.P.'s motion for summary judgment (Doc. 17). Having reviewed the record, the parties' briefs, and the applicable law, the court ORDERS that the motion is GRANTED. Final judgment is entered in favor of Defendant.

**II. FACTS**

This is a Title VII, Section 1981, and ADEA failure to promote and retaliation case. Plaintiff Jose A. Gomez ("Gomez"), a Mexican-American and Orthodox Jew over the age of fifty, began working as a printer for Screen Graphics Incorporated ("SGI"), an advertising sign manufacturer, in 1971. In 1977, he was promoted to a salaried Supervisor of the Cutting and Finishing Department. When LSI Integrated L.P. d/b/a Graphic Solutions Plus ("LSI") purchased SGI in 1989, LSI became Gomez's employer. Subsequently, Gomez was demoted from salaried Supervisor to Cutting Machine Operator, a position he has held at LSI since 1990. Gomez currently earns over $14.00 per hour, which is well above the maximum wage for an employee in his position, according to LSI's 2004

1

Wage Rate Structure.

In 1997, Gomez converted to Orthodox Judaism. He informed LSI that his new religion requires observance of the Sabbath and Jewish Holidays. In addition, Gomez asked LSI if he could leave work at 2:00 p.m. every Friday because his religion does not permit him to work after sundown on Friday. There is no dispute that LSI has continuously accommodated his religious-based request to leave work early on Fridays, and to not work on Saturdays or other recognized Jewish Holidays.

In 1998, LSI instituted a written wage program of job classifications, setting forth grade levels required for promotions to various positions. Under LSI's Wage Program of Job Classification, "To be considered as a candidate for an open position, these qualifications must be met: the position applied for must be the next level in the applicant's current job progression or applicant must be otherwise qualified (i.e. worked previously in the applied-for job progression at qualifying grade); employee must have a good attendance record; employee must have been in current position at least six (6) months; employee must not be on probation for any reason." (Docket Entry No. 22, Ex. 6).

In December 2004, Gomez applied for a promotion to Team Leader of the Cutting and Finishing Department. According to LSI's Wage Program, Gomez must work as a Level 9 Cutting Machine Setup Specialist before becoming eligible for the promotion to the Level 15 Team Leader Position. There is no dispute that Gomez has worked as a Cutting Machine Operator, classified as a Level 5 position, since 1990. There is also no dispute that Gomez has never applied for a promotion to the Level 9 Cutting Machine Setup Specialist position. Gomez's application for promotion to Team Leader was denied and the position was filled by Naela Lopez ("Lopez"). Lopez, a Mexican-American over the age of forty, worked as a Level 11 Graphics CNC Programmer prior to being promoted. Her previous position made her eligible for the promotion to Team Leader of the Cutting

and Finishing Department, pursuant to LSI's written policy.

After being passed over for the promotion, Gomez filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). He claimed that he was discriminated against because of his national origin and religion in violation of Title VII of the Civil Rights Act of 1964, as amended, and because of his age, in violation of the Age Discrimination in Employment Act of 1967, as amended.

In his affidavit, Gomez asserts for the first time that he was retaliated against for filing an EEOC complaint. Gomez filed the complaint in December 2004. In July 2005, he was reprimanded for excessive tardiness and unexcused absences. He was suspended for three days without pay and warned that future violations may result in his termination. Gomez alleges that this was the first time this type of action was taken in response to his poor attendance record, and, therefore, the underlying reason for it was retaliation for filing the EEOC complaint.

## III. LAW

### A. Summary Judgment Standard

The movant seeking a federal summary judgment initially must inform the court of the basis for his motion and point out those portions of the pleadings, depositions, answers to interrogatories, and admissions on file that demonstrate the absence of a genuine issue of material fact and show that he is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The movant need not negate the opposing party's claims nor produce evidence showing an absence of a genuine factual issue, but may rely on the absence of evidence to support essential elements of the opposing party's claims. International Assoc. of Machinists & Aerospace

Workers, Lodge No. 2504 v. Intercontinental Mfg. Co., 812 F.2d 219, 222 (5th Cir. 1987). The burden then shifts to the non-movant to set forth specific facts and competent summary judgment evidence to raise a genuine issue of material fact on each essential element of any claim on which he bears the burden of proof at trial. Fed. R. Civ. P. 56(c). The substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The non-moving party may not rest on mere allegations or denials in its pleadings, but must produce affirmative evidence and specific facts. Anderson, 477 U.S. at 256-57. He meets this burden only if he shows that "a reasonable jury could return a verdict for the non-moving party." Id. at 254. A mere scintilla of evidence will not preclude granting of a motion for summary judgment. Id. at 252.

All reasonable inferences must be drawn in favor of the non-moving party. Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574. 587-88 (1986), citing United States v. Diebold, 369 U.S. 654, 655 (1962). Once the burden of proof has shifted to the non-movant, he "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586. Instead he must produce evidence upon which a jury could reasonably base a verdict in his favor. Anderson, 477 U.S. at 249. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id., 477 U.S. at 249-50. Moreover the non-movant must "go beyond the pleadings and by her own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is a genuine issue for trial." Webb v. Cardiothoracic Surgery Assoc. of North Texas, P.A., 139 F.3d 532, 536 (5th Cir. 1998). Unsubstantiated and subjective beliefs and conclusory allegations and

4

opinions are not competent summary judgment evidence. Grimes v. Texas Dept. of Mental Health and Mental Retardation, 102 F.3d 137, 139-40 (5th Cir. 1996); Forsyth v. Barr, 19 F.3d 1527, 1533 (5th Cir.), cert. denied, 513 U.S. 871 (1994); Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir.), cert. denied, 506 U.S. 825 (1992). Nor are pleadings summary judgment evidence. Wallace v. Texas Tech University, 80 F.3d 1042, 1046 (5th Cir. 1996), citing Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)(*en banc*). The non-movant cannot discharge his burden by offering vague allegations and legal conclusions. Salas v. Carpenter, 980 F.2d 299, 305 (5th Cir. 1992); Lujan v. National Wildlife Fed'n, 497 U.S. 871, 889 (1990). Nor is the district court required by Rule 56 to sift through the record in search of evidence to support a party's opposition to summary judgment. Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998), citing Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915-16 & n.7 (5th Cir.), cert. denied, 506 U.S. 832 (1992).

**B. Governing Legal Standard for Discrimination Claims under the ADEA, Title VII and Section 1981.**

The same standard of proof applies to claims under the ADEA, Title VII and Section 1981. Roberson v. Alltel Info. Servs., 373 F.3d 647, 651 (5th Cir. 2004). A plaintiff states a *prima facie* case of discriminatory failure to promote under the ADEA if he shows that: (1) he was over forty years old; (2) qualified for the position sought; (3) not promoted; and (4) that the position was filled by someone younger or the failure to promote was due to his age. Bennett v. Total Minatome Corp., 138 F.3d 1053, 1060 (5th Cir. 1998).

To establish a *prima facie* case of race discrimination based on a failure to promote under

Title VII or Section 1981 a plaintiff must prove that: (1) he is a member of a protected class; (2) he was qualified for the position sought; (3) he was not promoted; and (4) either the position was filled by someone not in the protected class, or the person was not promoted because of his race. Pegram v. Honeywell, Inc., 361 F.3d 272, 281 (5th Cir. 2004); Pratt v. City of Houston, 247 F.3d 601, 606 (5th Cir. 2001). Satisfying these four elements creates a presumption of discrimination, Shackelford, 190 F.3d at 404, and "only a minimal showing is necessary" to do so. Bauer v. Albemarle, 169 F.3d 966, 967 (5th Cir. 1999); see also, Nichols v. Loral Cought Sys. Corp., 81 F.3d 38, 41 (5th Cir. 1996) ("to establish a *prima facie* case, plaintiff need only make a very minimal showing").

A plaintiff who succeeds in making a *prima facie* case of age or race discrimination shifts the burden to the defendant to articulate some legitimate reason for the adverse employment decision. McDonnell-Douglas v. Green, 411 U.S. 792, 802 (1973) (Title VII); Machinchick v. PB Power, Inc., 398 F.3d 345, 350 (5th Cir. 2005) (ADEA). If defendant is successful, plaintiff must introduce evidence tending to show either that the articulated reason is false *or* that the motivating factor for the decision was plaintiff's protected status. Keelan v. Majesco Software, Inc., 407 F.3d 332 (5th Cir. 2005) (Race); Machinchick, 398 F.3d at 352.

**C. Legal Standard Governing Retaliation claims under Section 1981, Title VII and the ADEA.**

To survive summary judgment plaintiff must make a *prima facie* showing (1) that the plaintiff engaged in activity protected by Title VII, Section 1981 or the ADEA, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action. Banks v. East Baton Rouge Parish Sch. Bd., 320 F.3d 570, 575 (5th Cir. 2003). A "protected activity" is "opposition to any practice rendered unlawful by Title VII, including making

6

a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII." Ackel v. National Communications Inc., 339 F.3d 376, 385 (5th Cir. 2003) (quoting Green v. Administrators of the Tulane Educational Fund, 284 F.3d 642, 657 (5th Cir. 2002). At the summary judgment stage, to satisfy the causation element the plaintiff "must produce some evidence of a causal link between the protected activity and the adverse employment action." Ackel, 339 F.3d at 385 (citing Fierros v. Tex. Dep't of Health, 274 F.3d 187, 191 (5th Cir. 2001)). In determining whether plaintiff's protected activity caused the adverse employment action the "focus is on the final decision maker." Id. (quoting Gee v. Principi, 289 F.3d 342, 346 (5th Cir. 2002)).

**IV. APPLICATION OF LAW TO THE FACTS**

**A. Plaintiff's National Origin, Religion, and Age Discrimination Claims.**

In the present case, there is no dispute that Gomez is a member of a protected class under Title VII, Section 1981, and the ADEA. However, Gomez cannot establish a *prima facie* case of race or age discrimination because he failed to meet the posted requirements for the position sought. LSI's facially-neutral written policy does not permit employees to skip from a Level 5 to a Level 15 position. As a Level 5 employee, Gomez was required to work at a Level 9 position before becoming eligible for a promotion to the Level 15 Team Leader position. There is no evidence or even claim that Gomez ever applied for the Level 9 Cutting Machine Setup Specialist position, or any other intermediate position, that would make him eligible for the promotion to Team Leader. Furthermore, there is no evidence that LSI has ever made any exceptions to its Job Classification Program. Gomez argues that because he worked as a salaried Supervisor from 1977 to 1990 he is otherwise qualified for the position of Team Leader. However, LSI's grade system was not instituted until 1998, making

it impossible to determine if his previous work was at the required grade level to make him eligible for the promotion.

Furthermore, in his sworn depositio, Gomez testified that he did not know if he was turned down for the promotion because of his age[1], religion[2], or national origin.[3] Gomez later filed an affidavit which directly contradicts his deposition testimony by asserting that he now believes age as well as religion and national origin had an impact on LSI's decision to deny his promotion. He also argues that the answers in his deposition are not conclusive, and that he did not understand some of the questions posed during the deposition. Fifth Circuit law is well settled that a nonmovant cannot defeat a motion for summary judgment by submitting an affidavit which directly contradicts, without explanation, his previous testimony. Albertson v. T.J. Stevenson & Co., Inc., 749 F.2d 223 (5th Cir. 1984). Here, Gomez argues that he was nervous in front of the camera and was very uncomfortable during the video deposition. He also alleges that he did not understand the questions posed and that he misinterpreted the advise of his counsel. Gomez's explanation for the discrepancies in his deposition testimony is unconvincing, and his conclusory affidavit, unsupported by any admissible evidence, shall not be given credence over his sworn deposition testimony.

Even assuming *arguendo* that Gomez could establish a *prima facie* case of race or age discrimination, he has failed to show that LSI's non-discriminatory reason for denying him the promotion, namely that Gomez was not qualified based upon written company policy, was pretextual.

---

[1] "Q. Do you believe that you were turned down for the promotion in December because of your age? A. I don't know. (Dep. p. 70 lines 5-7).

[2] "Q. Do you believe that you were turned down for the promotion in December because of your religion? A. I don't know. (Dep. p. 70 lines 2-4).

[3] "Q. Do you believe that you were turned down for the promotion in December because of your national origin? A. I don't know. (Dep. p. 70 lines 8-10).

He has failed to produce sufficient evidence to demonstrate that discriminatory intent motivated the acts or omissions of anyone involved in the promotion process, or that LSI's legitimate reason for denying him the promotion was false. Moreover, in order to establish pretext, the losing candidate's qualifications must "leap from the record and cry out to all who would listen that [he] was vastly--or even clearly--more qualified for the subject job." See Odom v. Frank, 3 F.3d 839, 847 (5th Cir. 1993). In the present case, Gomez has failed to produce sufficient evidence that he was clearly more qualified, or that Lopez was unqualified, for the position. To the contrary, the evidence suggests that Lopez, a forty-five year old Mexican American who worked as a Level 11 Graphics CNC Programmer prior to the promotion, was actually more qualified than Gomez. Therefore, LSI's reason for denying Gomez the promotion and selecting Lopez instead appears to have been a legitimate business decision, unmotivated by Gomez's protected status. See Walton v. Bisco Indus., Inc., 119 F.3d 368, 372 (5th Cir. 1997)("Discrimination laws [are not] for judicial second-guessing of business decisions.").

**B. Gomez's Retaliation Claims Under Section 1981, Title VII, and the ADEA.**

Section 1981, Title VII, and ADEA also prohibit retaliation by employers against employees who have filed a charge of discrimination. 42 U.S.C. § 2000e-3(a). In the present case, Gomez asserts for the first time in his affidavit and "Surreply" that he was retaliated against by LSI for filing an EEOC complaint in December 2004. Gomez has failed to seek leave of court to amend his complaint to add a charge of retaliation. However, even if Gomez had requested leave of court and leave of court was granted, the claim remains meritless. In July 2005, Gomez was reprimanded for excessive tardiness and unexcused absences. He was suspended for three days without pay and warned that future violations may result in his termination. Gomez argues that his suspension was

retaliation for filing the EEOC complaint. However, LSI's purported reason for suspending Gomez, namely his poor attendance record, appears to be legitimate in light of the that Gomez does not dispute that he was excessively tardy and had unexcused absences. Employment discrimination laws are "not intended to be a vehicle for judicial second-guessing of business decisions, nor ... to transform the courts into personnel managers." Bienkowski v. Am. Airlines, Inc., 851 F.2d 1503, 1507-08 (5th Cir. 1988).

Gomez argues that LSI has never taken such adverse action against him in response to his poor attendance record before he filed the complaint. He also asserts that LSI has never taken this type of action with any other employee. To support his argument, Gomez relies on the attendance record of Steve Rundall ("Rundall"), an LSI salaried employee, who missed a significant amount of work in 2005 due to a personal medical condition as well as the death of his father. To raise an inference of discrimination, Gomez may compare his treatment to that of nearly identical, similarly situated individuals. Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1090 (5th Cir.1995). To establish disparate treatment, Gomez must show that LSI gave preferential treatment to another employee under "nearly identical" circumstances. Okoye v. Univ. of Tex. Houston Health Sci. Ctr., 245 F.3d 507, 514 (5th Cir.2001). Gomez has failed to meet this burden. Rundall was a salaried employee, whereas Gomez was an hourly employee, thus it does not appear that LSI gave preferential treatment to an employee under "nearly identical" circumstances. Furthermore, the evidence suggests that Rundall's absences were excused, whereas Gomez's absences were not. For these reasons, the Court finds that even if Gomez had obtained leave of court to assert his retaliation claim, LSI's reason for placing him on suspension was based on a legitimate, non-discriminatory, reason.

## V. CONCLUSION

For the aforementioned reasons, the court ORDERS as follows:

1. Defendant LSI's motion for summary judgment is GRANTED on Plaintiff's Title VII, Section 1981, and ADEA claims for failure to promote.

SIGNED at Houston, Texas, this 11th day of August, 2006.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE